IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jedson Engineering, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:08-cv-413 |
| v. | ) | |
| | ) | Judge Michael R. Barrett |
| Spirit Construction Services, Inc., | ) | |
| and | ) | |
| Baisch Engineering, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFF JEDSON ENGINEERING, INC.'S
COPYRIGHT INFRINGEMENT CLAIMS (COUNTS 1-6)**

Pursuant to Fed. R. Civ. P. 56, Defendant Spirit Construction Services, Inc. ("Spirit"),

through its undersigned counsel, hereby moves for partial summary judgment on Plaintiff Jedson

Engineering, Inc.'s copyright infringement claims. Defendant Baisch Engineering, Inc. also

joins this motion.

This Motion is supported by the attached memorandum of law.[1] A proposed Order

granting the Motion is also attached.

---

[1] Jedson's has brought copyright infringement claims against both Spirit and Defendant Baisch Engineering, Inc. ("Baisch"). Accordingly, Spirit hereby joins and fully incorporates by reference Baisch's Motion and Memorandum in Support of Partial Summary Judgment on Plaintiff's Copyright Infringement Claims (Counts 1-6), filed concurrently herewith by the attorneys for Baisch.

Respectfully submitted,

SPIRIT CONSTRUCTION SERVICES, INC.

Date: March 31, 2010

_____/Shanda L. Spurlock/_____
Mark T. Hayden (0066162) mth@gdm.com
Shanda L. Spurlock (0076015) sls@gdm.com
Greenebaum Doll & McDonald, PLLC
2900 Chemed Center
255 East 5th Street
Cincinnati, Ohio 45202
513-455-7600 (telephone)
513-762-7925 (facsimile)

BAISCH ENGINEERING, INC.

_____/s/ Robert F. Ware_____
Robert F. Ware (0055515)
(Robert.Ware@ThompsonHine.com)
Jennifer S. Roach (0074143)
(Jennifer.Roach@ThompsonHine.com_
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1216
216.566.5500 (telephone)
216.566.5800 (facsimile)

<u>**MEMORANDUM OF LAW**</u>

**I.**    <u>**INTRODUCTION**</u>

Defendant Spirit Construction Services, Inc. ("Spirit"), a general contractor, and Plaintiff

Jedson Engineering, Inc. ("Jedson"), an engineering subcontractor, collaborated on the design

and construction of two tissue manufacturing facilities, one for Cellynne Paper Converters, Inc.

(the "Cellynne Project"), and the other for Lincoln Paper and Tissue, Inc. (the "Lincoln

Project").  When Spirit had an opportunity to bid on a third contract for a similar tissue

manufacturing facility for The Doubletree Paper Company, Inc. (the "Doubletree Project"),

Spirit again collaborated with Jedson and hired it to produce preliminary drawings for Spirit's

bid process.  When Spirit received the contract for the Doubletree Project, however, it made a

business decision to instead use Defendant Baisch Engineering, Inc. ("Baisch") for the project's

engineering.  Disappointed its subcontract bid was not accepted by Spirit, Jedson has turned to

this Court for redress, struggling to fit its grievances with Spirit and Baisch into a host of legal

theories.  Among its 20 counts are three counts of copyright infringement against Spirit and three

counts against Baisch, one for each of the three projects.

In its haste to secure copyright registrations for its "architectural works" and "technical

drawings," however, Jedson included in its applications materially overstated claims of

authorship and ownership.  It misrepresented to the Copyright Office that it was the work-for

hire "author" of all the materials in which it claimed ownership.  It neglected to properly identify

and disclaim pre-existing drawings and other materials owned or authored by third parties

included in the materials Jedson claims to own.  It neglected to consider whether anything in its

claimed drawings was even entitled to copyright protection, given the "functional" nature of the

works.

These errors are fatal to Jedson's copyright registrations, which in turn is fatal to all six of its infringement claims.  At a minimum, Jedson's failure to take these steps deprives it of the presumptions of validity otherwise generally afforded to copyright registrations, if not invalidates them in their entirety.

Even if any of Jedson's five copyright registrations contain even a modicum of original, protectable, expression, in the absence of the statutory presumptions, Jedson bears the burden of proving with respect to each of the five copyright registrations upon which its six infringement claims are based:

- That any portion or component of the subject work claimed to have been copied constitutes original, protectable expression;

- That any such portion or component was either authored by Jedson or that Jedson has properly identified its author and has in fact properly acquired ownership of the copyrights in same; and

- That any such portion or component was in fact copied by Spirit or by Baisch at Spirit's direction and without consent or license (and insofar as the copyright at issue is "thin," the copying must have been nearly verbatim).

Jedson has failed to provide any testimony or evidence that would carry its burden to do so, instead relying exclusively upon presumptions that do not apply, and the undisputed fact that Spirit shared "copies" of its drawings with Baisch.  Accordingly, Defendants are entitled to summary judgment on Jedson's six copyright infringement claims.

## II.  STATEMENT OF UNDISPUTED FACTS

In 2005, Spirit received the general contracts for the design and construction of the Cellynne Project and the Lincoln Project.  Second Amended Complaint "Complaint" [D.E. 82] at ¶¶ 9,13.  The contracts for each of these projects included the following provision:

> [Project Owner] shall have title to all drawings (including but not limited to CAD and other electronic drawings), specifications, work completed or in the course of construction or installation...

4

(Cellynne and Lincoln contracts attached as Decl. Exh. W and X).[2]

Spirit subcontracted with Jedson to perform the engineering work for both projects. Complaint at ¶¶ 10, 14. Since Jedson had never been the lead engineering firm for an entire project such as this, Spirit also involved Pine Ridge Engineering, a consulting company specializing in tissue-making operations. Deposition of David Ritchie at 78:11-79:5; 82:3- 83:4, hereinafter "Ritchie depo. at ___"; attached as Decl. Exh. M. Pine Ridge was to help Jedson with the design of the tissue manufacturing facility, to assist with the engineering drawings, and to lead meetings with Metso, the manufacturer of the machine that was installed at both projects. *Id.*

During the course of its work, Pine Ridge provided Jedson with General Arrangement drawings and Piping and Instrument Diagrams, and provided comments and suggested revisions to various parts of the diagrams. Deposition of Daniel Platkowski at 244-247, hereinafter "Platkowski depo. at __"; attached as Decl. Exh. Q. Preliminary drawings for the project of another engineering firm, Dick Engineering, also were shared with Jedson. *Id.* at 248. Jedson also integrated into its drawings equipment blocks and drawings from other equipment manufacturers, such as the machine manufacturer, Metso, as well as other vendors for pumps, motors, duct work, and HVAC equipment. *Id.*; Ritchie depo. at 78:11-79:5; 82:3- 83:4; Deposition of Carl Fisher at 167:10- 168:23; 184:3-13; 172-185, hereinafter "Fisher depo. at __", Decl. Exh. O.

After the Cellynne and Lincoln projects, Spirit bid on a contract to design and build a similar, third tissue manufacturing facility, the Doubletree Project. Complaint at ¶ 23. Spirit

---

[2]     Copies of Certificates of Registration, deposition transcripts, exhibits, affidavits, expert reports, and contracts cited herein are attached and authenticated in a separately filed Declaration of Shanda L. Spurlock, cited herein as "Decl. Exh. __."

contracted with Jedson to provide preliminary drawings for use during the bid process, for which Jedson was paid in full.  After Spirit was awarded the general contract for the Doubletree Project, Spirit awarded the subcontract for the engineering work to Defendant Baisch Engineering, Inc. Since the facility to be built for the Doubletree Project was functionally similar to the facilities built for Cellynne and Lincoln in several respects, Spirit shared the engineering drawings from those projects with Baisch.

In November 2007, Jedson applied for and received five U.S. Copyright Registrations for each of the three projects:

- Reg. No. VA1632527, entitled "Tissue Machine Facility 1 (Cellynne) 4/2006"(Architectural Work);
- Reg. No. VA1632529, entitled "Tissue Machine Facility 1 (Cellynne)" (Technical Drawings);
- Reg. No. VA1632532, entitled, "Tissue Machine Facility 2 (Lincoln) 9/2006" (Architectural Work);
- Reg. No. VA1632535, entitled "Tissue Machine Facility 2 (Lincoln)" (Technical Drawings); and
- Reg. No. VA1632538, entitled "Tissue Machine Facility 3 (Doubletree – Royal)"

Certificates of Registration, attached as Decl. Exhs. B-F.

Each registration identified the works as "works made for hire," and identified Jedson as the sole author of the works. In the section of the registrations entitled "limitation on the copyright claim," Jedson did not identify or disclaim any pre-existing material in either of the architectural work registrations or the Cellynne technical drawings registration.  Decl. Exhs. B-D.  For the Lincoln technical drawings registration, Jedson identified only the Cellynne drawings as previously created material, and for the Doubletree registration, Jedson identified only the Cellynne technical drawings and the Lincoln technical drawings.  *Id.;* Decl. Exhs. D-F.  On each of its applications for registration, Jedson represented to the Copyright Office that the subject work had been published, and provided a country and specific date of fist publication, although

months after Jedson initiated this lawsuit (and after it was apparent that "publication" of the works was irreconcilable with Jedson's newly-asserted trade secret claims), it amended each of the above registrations to claim that the works were unpublished.  Decl. Exhs. G-K.

For the four Cellynne and Lincoln registrations, Jedson deposited with the Copyright Office the *entirety* of all technical drawings created in connection with the projects.  Decl. Exhs. B-E.  With respect to the two "architectural works" registrations, Jedson also deposited sketches and photographs of the exterior of the buildings, in addition to the same technical drawings. Decl. Exhs. B and D.  Finally, with respect to the Doubletree registration, Jedson deposited all of the technical drawings it created in connection with Spirit's initial bid submission.  Decl. Exh. F.

Jedson's Second Amended Complaint contains six claims of copyright infringement, three against Spirit and three against Baisch, based on the three specific projects.  Complaint, Count 1-6.  Given that all of Jedson's drawings were derived from the Cellynne technical drawings, the analysis contained herein applies equally to all of Jedson's infringement claims.

## III.    SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate when the evidence "show[s] that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law.   *Id.* at 248.  A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*  The law places the burden on the movant to establish that there are no genuine issues of material fact in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party has satisfied its initial burden of going forward, the burden then shifts to the nonmoving party to show that there is a genuine issue of material fact for trial.  *Anderson*, 477 U.S. at 249.  The evidence presented in a motion for summary judgment must be viewed in the

light most favorable to the non-moving party. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. ARGUMENT

To succeed on its copyright infringement claims, Jedson must show (1) ownership of a valid copyright, and (2) unauthorized copying of protected elements of that copyrighted work. *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Jedson cannot prove either of these elements.

### A. Jedson Cannot Show Ownership of a Valid Copyright

#### 1. Jedson Is Not Entitled to a Presumption of Validity for its Copyright Registrations

Section 410(c) of the Copyright Act provides, "[i]n any judicial proceedings the certificate of a registration…shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). This presumption, however, is not conclusive or irrebuttable. A party charged with copyright infringement may present evidence to rebut the presumption of validity itself, or of the specific factual information contained therein. *See, e.g. St. Luke's Cataract and Laser Inst. v. Sanderson*, 573 F.3d 1186, 1202 (11th Cir. 2009) (affirming defense verdict despite presumptively valid registration); *Medforms, Inc. v. Healthcare Management Solutions, Inc.*, 290 F.3d 98, 114 (2d Cir. 2002) (presumption of validity afforded a copyright registration may be rebutted); *R.F.M.A.S., Inc. v. So,* 619 F.Supp. 2d 39, 55 (S.D.N.Y. 2009) (plaintiff not entitled to presumption of validity of facts in registration due to anomalies in the application process); *CHM Industries, Inc. v. Structural & Steel Products, Inc.*, 89 U.S.P.Q.2d (BNA) 1303 (N.D. Tx. 2008) (denying preliminary injunction despite presumptively valid registration due to misrepresentations in the application).

As fully discussed in Defendants' Opposition to Jedson's Motion for Partial Summary Judgment on Authorship and Ownership,[3] which Defendants hereby  incorporate by reference, Jedson is not entitled to any presumption of validity by virtue of its copyright registrations because overwhelming evidence exists to rebut the presumption.  (*See, e.g.*, *Id.* at 4-13).  In the absence of the presumption, Jedson bears the burden to prove all elements contained in its registrations, including non-functionality, sole ownership, sole authorship, and originality of all materials that it claims in its registration.  Jedson's own admissions call into question each of these.  Additionally, Jedson bears the burden to prove its works contain any copyrightable expression on which to base an infringement claim.  Jedson has not adduced any evidence in this case that would enable it to carry this burden, instead cloaking itself solely in the presumption that has been rebutted.  Consequently, Jedson cannot show it owns a valid copyright in any of its alleged designs.

> 2. **Jedson Cannot Claim Protection for Its Admittedly "Functional" Drawings**

The first prong of the infringement analysis "tests the originality and non-functionality of the work."  *Lexmark Int.'l Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004).  Although the threshold for proving "originality" is relatively low, "even if a work is in some sense 'original' under § 102(a), it still may not be copyrightable because § 102(b) provides that 'in no case does copyright protection for an original work of authorship extend to any idea procedure, process, system, method for operation, concept, principle, or discovery, regardless of its form.'"  *Lexmark*, 387 F.3d at 534, *citing* 17 U.S.C. § 102(b).  In other words, before a copyright infringement analysis can occur, "in cases like this one, that involve a functional object

---

[3]        Spirit incorporates by reference the entirety of the arguments with respect to Jedson's infringement claims contained in Defendants' Opposition to Plaintiff Jedson Engineering, Inc.'s Motion for Partial Summary Judgment filed concurrently herewith.

rather than a creative work, it is necessary to eliminate those elements dictated by function."

*Kohus v. Mariol*, 328 F.3d 848, 856 (6th Cir. 2003).

By Jedson's own admission, everything in their technical drawings is dictated by functionality, not creativity, and therefore not entitled to copyright protection.  Ritchie at 154:12-21, Decl. Exh. M.  These functional items include:

- Features dictated by site plans, permit requirements, incoming utilities, equipment specifications, and Tissue Industry Standard Practices (Interrogatory No. 10; Ritchie 130, 162:22-163:14);

- Machine dimensions and hookups (Ritchie depo. at 161:24-162:7, Decl. Exh. M);

- Electrical wiring diagrams (Carl Fisher depo. at 167:10-168:23, Decl. Exh. O);

- Equipment blocks (*Id.* at184:3-13); and

- Various other aspects of the designs (*Id.* at 172-185)

Indeed, when asked whether he could identify *anything* that is original and creative in the Cellynne and Lincoln drawings, Jedson's Rule 30(b)(6) witness could point to nothing.  Fisher depo. at 184-185, Decl. Exh. O.  With respect to the DoubleTree concept drawings, Jedson's Ritchie testified that functionality underscores *all* of the design decisions.  *See, e.g.* Ritchie depo. at 170-175, Decl. Exh. M.

Despite this admitted functionality of (and lack of creativity in) its technical drawings, Jedson nevertheless seeks protection for the entirety of their drawings, including elements precluded from protection by 17 U.S.C. § 102(b).  Since Jedson is not entitled to the presumption of validity in any of its registrations, it bears the burden to affirmatively identify the non-functional elements that are entitled to protection.  Jedson cannot do so, because no such items exist.

**B.      Jedson Cannot Prove Ownership of Protectable Elements of Expression**

Even if Jedson could carry its burden to show the validity of its copyright registrations, and even if they contain even a modicum of original creative material that is not merely functional, that is not the end of the analysis.  Under controlling Sixth Circuit precedent, the Court also must identify what aspects of the work, if any, are protectable by copyright, and then determine whether the allegedly infringing work is "substantially similar" to protectable elements of the artist's work.  *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003).  With respect to the first step, the Court must "filter out the unoriginal, unprotectible elements – elements that were not independently created by the inventor, and that possess no minimal degree of creativity."  *Id.*  The Court also must filter out elements dictated by efficiency, necessity, or external factors.  *Id.* at 856.  Proper application of this analysis is fatal to Jedson's infringement claims.

**1.      Jedson Cannot Claim Copyright Ownership in the "Idea" of a "Low-Cost Tissue Manufacturing Facility."**

"It is axiomatic, to begin with, that mere abstract ideas are not protectable."  *Id.*, citing *Mazer v. Stein*, 347 U.S. 201, 217 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea – not the idea itself"); 17 U.S.C. § 102(b).  Here, it is clear that Jedson is not seeking to protect any creative elements contained in its technical drawings, but instead seeks broad protection for a "concept" or "idea": a low-cost tissue manufacturing facility.  *See, e.g.*, Deposition of Glenn Simmons at 38, hereinafter "Simmons depo. at __", attached as Decl. Exh. T  (discussing the "low cost, easy to build, highly efficient Cellynne style concept that they developed); Fisher depo. at 59-60, Decl. Exh. O (explaining that Cellynne project was intended to come up with a "compact,

maintainable, and …lower cost" design); Ritchie depo. at 154, Decl. Exh. M (acknowledging drawings show "functional characteristics" and concept).

Because of the highly functional nature of Jedson's alleged works, and because of the efficiency, necessity, and external factors that dictated Jedson's design choices, whatever copyright Jedson may possess in the drawings is necessarily "thin," and consequently, Jedson cannot rely merely on the undisputed fact that its drawings were shared with Baisch as proof of actionable copying.  *See, e.g., Trek Leasing, Inc. v. United States*, 66 Fed. Cl. 8, 11, 75. U.S.P.Q.2d (BNA) 1449 (Ct. Fed. Cl. 2005) (despite defendant's admission of access and factual copying, defendant nevertheless entitled to judgment as a matter of law in view of "thin" copyright in architectural work); *Attia v. Society of the New York Hospital*, 201 F.3d 50 (2$^d$ Cir. 1999) ("to the extent that such plans include generalized notions of where to put functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely on, these are 'ideas' that may be taken and utilized by a successor without violating the copyright of the original 'author' or designer").  Therefore, in order to be actionable, Jedson must show slavish copying – or "near identity" -- under the "more discerning observer" test.  *See Trek Leasing,* 66 Fed. Cl. at 19 (since "[Plaintiff's] copyright is a "thin" copyright, [Plaintiff's work] will only be protected from nearly verbatim copying or a showing of substantial similarity") (citations omitted).[4]

---

[4]      Although the *Trek Leasing* opinion is not binding, the factual similarities to the instant case, and its citation to *Kohus*, make it highly persuasive authority.  Moreover, it is worth noting that it was written by Judge Edward Damich, who played a key role with senator Orrin Hatch on the passage of the DMCA, served as a Commissioner on the Copyright Royalty Tribunal, is a visiting professor of intellectual property at Catholic University, has testified before Congress on copyright matters, and is published on copyright topics.

2.    **Jedson Cannot Claim Ownership of the Substantial Third-Party Content Included In Its Registrations**

Jedson also cannot claim copyright protection in materials that it did not author and does not own.  (*See, e.g.* Defendants' Opposition to Jedson's Motion for Partial Summary Judgment at 8-9).  Jedson has admitted in sworn testimony that the designs for which it obtained copyright registrations include pre-existing, third-party materials.  Jedson Interrogatory Responses and 10, Decl. Exh. L.  Jedson affiant Carl Fisher explicitly states in his affidavit in support of Jedson's Motion that Jedson "used the services of an outside engineering firm (Pine Ridge Engineering) for preliminary drafting, as well as "standard drawing equipment blocks provided by the vendors."  Affidavit of Carl Fisher at ¶¶ 3-4, attached as Decl. Exh. P.  Jedson affiant David Richie further states:

> There are elements of vendor supplied drawings that are copied or redrawn in some of the Jedson drawings to provide accurate representations of the space occupied by the purchased item and Jedson would create interconnecting items like piping and electrical wiring.  *The vendor supplied drawings include Metso's Tissue Machine, Hot Air Fans, and Supplied Ductwork.*

Affidavit of David Richie at ¶ 4, attached as Decl. Exh. N.  Indeed, Jedson's 30(b)(6) witness on the topic identified many sources of pre-existing third party materials that were part of the drawings for which copyright protection was obtained, including:

- Tissue machine designer Metso (Richie depo. at 78:11-79:5, Decl. Exh. M);

- Pine Ridge Engineering (*Id.* at 82:3-83:4);

- Designer and Manufacturer of the actual building structure, Ceco (*Id.* at 84:1-7; 86:3-21); and

- HVAC designer Strategic Facility Solutions  (*Id.* at 88:9-89:9).

Under controlling Sixth Circuit precedent, Jedson is not entitled to claim an ownership interest in such materials.  These elements must be filtered prior to any infringement analysis.

13

3.      **Proper Application of the Merger and Scenes a Faire Doctrines Further Diminishes the Scope of Jedson's Copyright Claims.**

The Sixth Circuit also has instructed that the Court must apply the merger and scenes a faire doctrines to filter out any non-protectable elements from the copyright analysis.  *See, e.g.*, *Lexmark,* 387 F.3d at 535; *Kohus*, 328 F.3d at 856.  Under the merger doctrine,

> where the expression is essential to the statement of the idea, or where there is only one way or very few ways of expressing the idea, the idea and the expression are said to have 'merged.'  In these instances, copyright protection does not exist because granting protection to the expressive component of the work necessarily would extend to protection to the work's uncopyrightable ideas as well.

*Lexmark,* 387 F.3d at 535 (citations omitted); *see also Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 319 (6th Cir. 2004) (where idea and expression are intertwined and where non-protectable ideas predominate, the expression is not protected); *Trek Leasing*, 66 Fed. Cl. at 13-14 (discussing merger of the "idea" of a particular architectural style and the expression of that idea).[5]

The Court also must filter elements not protectable because of the scenes a faire doctrine, another doctrine that the Sixth Circuit dictates must be applied.  "Scenes a faire" are "those elements that follow naturally from the work's theme, rather than from the author's creativity, or elements that are dictated by external factors."  *Kohus*, 328 F.3d at 856, citing 4 Melville Nimmer, Nimmer on Copyrights § 13.03[F][3]; *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 401 (5th Cir. 2000).  The scenes a faire doctrine also requires that elements dictated by "external factors" or "practical realities" must be filtered out before performing the copyright analysis.  *Lexmark,* 387 F.3d at 535.

---

[5]      In its Motion for Partial Summary Judgment [D.E. 35], Jedson discounts the merger doctrine by relying on an unreported Illinois case, and stating in conclusory fashion that "there is sufficient originality and creativity in the depiction and arrangement of those machines and systems to satisfy the 'originality' threshold and escape application of the merger doctrine." *Id.* at 13. Jedson provides no elaboration, however, as to how this mere conclusory attorney argument leads to an "escape" from controlling Sixth Circuit precedent.

Here, all aspects of Jedson's alleged works are "dictated by the work's theme" – a "low cost, easy to build, highly efficient" concept of tissue manufacturing facility (Simmons depo. at 38, Decl. Exh. T) – or by "external factors" and "practical realities," such as:

> site plan information, environmental permitting requirements, incoming utility information, vendor drawings representing certain equipment which was used to construct the project, soil reports and pre-engineered metal building information.

Jedson Interrogatory Response No. 5, Decl. Exh. L. Indeed, the record is replete with Jedson's testimony about the external factors, efficiency concerns, industry standards, and practical realities that governed their design choices. Ritchie depo. at 154, 88:9-89:9, Decl. Exh. M; Affidavit of Fisher ¶¶ 3-4, Decl. Exh. P; Jedson Interrogatory Responses 5 and 10, Decl. Exh. L.

Despite substantial opportunities in discovery to specifically identify what constitutes "creative" aspects of its work, no Jedson witness could point to anything specific, other than the overall "unique concept." Although Jedson retained an expert to opine on its copyright claims, Jedson's expert made no effort to apply the requisite filtering analysis to Jedson's works. Otto Expert Report at 14-17, attached as Decl. Exh. U ; Deposition of Keith Otto at 261:24-267:1, hereinafter ("Otto depo. at __"), attached as Decl. Exh. R. Indeed, Mr. Otto's deposition testimony confirms that he did not properly filter out aspects of Jedson's copyright registrations to which they are not entitled protection before opining on infringement:

```
15      Q.   And my question to you is:  Did you
16   worry about what was originally created by Jedson
17   versus what may have existed or been contributed
18   by someone else?
19      A.   Did I worry about it?  I was
20   concerned about all of the layout, but I also
21   recognize that many of the blocks would come from
22   vendors, and they're readily available, and for
23   somebody to draw them over is not good sound
24   engineering decisions.  So I did not extract
25   anything in that evaluation that related to
1    vendors.
```

15

Otto depo. at 266: 15-267:1, (emphasis added).

Other unrefuted testimony echoes this.  Pine Ridge Engineering deponent Dan Platkowski testified at length  as to the lack of novelty or creativity of anything contained in the Cellynne or Lincoln drawings, and explained how external factors dictated the choices contained in the drawings, including the size of the tissue machine, cost saving considerations, site conditions, or owner preferences.  Platkowski depo. at 187:20-202:5, Decl. Exh. Q.  In view of this plethora of admitted external considerations that dictated Jedson's design choices, it is no surprise that Jedson has neglected to acknowledge, let alone apply, the requisite filtering analysis.

After the Court properly filters out all material in the alleged drawings that was not original to Jedson (material that was either preexisting or authored by others), filters out elements that are ineligible for protection under the merger doctrine (the idea/expression of a low-cost tissue manufacturing facility), and considers that all of Jedson's design choices were dictated not by creativity but by external constraints such as efficiency concerns, industry standards, machine specifications, site conditions, and owner demands, there is nothing of substance left in which Jedson can claim copyright protection.

Since Spirit has overwhelmingly rebutted any presumptions under 17 U.S.C. § 410 (*see supra at* 7-8), Jedson bears the burden to prove that its works contain protectable expression.  Jedson cannot point to any testimony, to any evidence, or to anything that will enable it to carry its burden.  Given Jedson's failure to adduce any testimony, expert or otherwise, to establish its entitlement to copyright protection, Jedson's copyright claims fail as a matter of law.  Summary Judgment in Defendants' favor is warranted on each of Jedson's copyright claims.

C.    <u>**Jedson Cannot Prove Substantial Similarity to the Protectable Elements**</u>

Even if, however, Jedson could show even the tiniest shred of creativity that remains after the proper filtering analysis, that is not the end of the inquiry.  "Once the unprotectible elements have been filtered out, the second step is to determine whether the allegedly infringing work is substantially similar to the protectable elements of the original."  *Kohus*, 328 F.3d at 856.  Here, too, Jedson's claims fail.

Because Jedson cannot rely on legal presumptions from its defective copyright registrations, it has the burden to prove each of these elements at trial.  None of Jedson's witnesses, including its expert witness, have undertaken this analysis, instead relying solely on the fact that a reference "copy" of its drawings was made.  This mere act of reproduction, however, is insufficient to prove actionable copyright infringement by the reproduction of copyrightable elements in the Baisch Doubletree plans.

Moreover, Jedson must prove substantial similarity between the *final* Baisch drawings for the Doubletree project.  The only evidence Jedson has adduced on this point, however, is its expert's minimal comparison of Jedson's drawings with "preliminary" Baisch drawings that were not and did not even become the final drawings used to construct the Doubletree Project.  Otto depo. at 124:11-125:15, Decl. Exh. R.  Mr. Otto admitted in his deposition that he did not even review and compare each and every Jedson drawing with the accused Baisch doubletree drawings; rather, he only "spot-checked" a small subset of the drawings as part of his analysis.  *Id.* at 83:20-85:7; 107:14-108:12.  While Mr. Otto claims he did a "visual" comparison of the respective drawings, he admits he performed comparison overlays on *only seven* of the hundreds of drawings claimed by Jedson, and no overlays or specific comparisons on *any* of the architectural and structural drawings.  *Id.* at 168:4-9; 247:1-16.  Moreover, at least one of these compared drawings had empty spaces for information in the title block, indicating that it was

never used, and at least two other drawings had a drawing number that was marked VOID, indicating those were not drawings actually used by Baisch in the Doubletree design. Otto depo. at 128:21- 129:12, Decl. Exh. R; Otto Expert Report, Attachment F2, p. 42, Decl. Exh. U.

This limited "spot-check" analysis is insufficient to carry its burden to show actionable copyright infringement by either Defendant. Once the proper filtration analysis occurs, no reasonable fact finder could find Jedson to have proven that Baisch's Doubletree drawings are substantially similar to Jedson's alleged copyrights. Consequently, Jedson cannot support Counts 1-6 of its Second Amended Complaint, and summary judgment in Defendants' favor is warranted.

**D.     Jedson's Fraud on the Copyright Office Invalidates Its Copyrights**

Summary judgment in Defendants' favor is also warranted because Jedson's conduct constitutes fraud on the copyright office. Jedson's admitted willful conduct serves to invalidate its registrations, thereby precluding its infringement claims.

A party seeking to prove fraud on the copyright office must identify some evidence of proof (1) that the copyright holder knew the copyright application contained inaccuracies, and (2) that those inaccuracies would have been material to the question of registration. *St. Luke's Cataract and Laser Inst. v. Sanderson*, 573 F.3d 1186, 1202 (11th Cir. 2009). If the Court determines there is some evidence that the copyright owner committed fraud, the burden of proving validity shifts back to the copyright owner. *Id.*

"[T]he knowing failure to advise the Copyright office of material facts constitutes grounds for holding the registration invalid and incapable of supporting an infringement action." *R. Ready Productions, Inc. v. Cantrell,* 85 F.Supp.2d 672, 691 (S.D. Tx. 2000). Although the burden to invalidate a copyright registration based on fraud is a heavy one, Jedson's conduct goes well beyond a mere innocent misstatement or clerical error. *Advisers, Inc. v. Wiesen-Hart,*

*Inc.*, 238 F.2d 706, 708 (6th Cir. 1956). Here, Jedson's misstatements were not inadvertent or immaterial, but rather demonstrate the deliberate, willful intent necessary to sustain a claim of fraud. *R. Ready Productions,* 85 F.Supp. 2d at 892 (invalidating registrations due to knowing failure to advise the copyright office of crucially material facts, including pre-existing materials and false claim of authorship in "entire text"); *cf. CHM Industries, inc. v. Structural & Steel Products, Inc.*, 89 U.S.P.Q.2d (BNA) 1303 (N.D. Tx. 2008) ("The failure to disclose that the designs that are the subject of a copyright application contain pre-existing work invalidates the resulting copyright").

Despite Jedson's explicit admissions of the numerous misstatements, it has taken no action to rectify the admitted false statements contained in its registrations with the copyright office. The fact Jedson *did* file a self-serving correction to amend the publication status of each work from "published" to "unpublished" demonstrates it is familiar with the process for correcting erroneous information (and that it is willing to "correct" a registration when doing so furthers its interests). Supplemental Certificates of Registration, Decl. Exh. G-K. Despite that familiarity, however, Jedson made a conscious and willful choice not to correct the admitted material errors. Also, these applications were filed in anticipation of litigation (see request for expedited treatment), so they had every reason to be careful not to overstate their claim. Jedson's willful decision not to correct these misstatements rises to the level of intent and counsels in favor of invalidating each of Jedson's registrations. Decl. Exh. G-K.

**V.**     **CONCLUSION**

Jedson is not entitled to any presumption of validity by virtue of its copyright registrations, because overwhelming evidence exists to rebut the presumption. In the absence of the presumption, Jedson bears the burden to prove all elements contained in its registrations, including the presence of original, creative expression that is entitled to protection, as well as

infringement thereof.  As explained above, Jedson cannot carry this burden.  Consequently, Defendants' Motion for Partial Summary Judgment on Jedson's copyright infringement claims should be granted.

Respectfully submitted,

SPIRIT CONSTRUCTION SERVICES, INC.

Date: March 31, 2010

_____/Shanda L. Spurlock/_____
Mark T. Hayden (0066162) mth@gdm.com
Shanda L. Spurlock (0076015) sls@gdm.com
Greenebaum Doll & McDonald, PLLC
2900 Chemed Center
255 East 5th Street
Cincinnati, Ohio 45202
513-455-7600 (telephone)
513-762-7925 (facsimile)

*Attorneys for Defendant Spirit Construction
Services, Inc.*


_____/s/ Robert F. Ware_____
Robert F. Ware (0055515)
(Robert.Ware@ThompsonHine.com)
Jennifer S. Roach (0074143)
(Jennifer.Roach@ThompsonHine.com_
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1216
216.566.5500 (telephone)
216.566.5800 (facsimile)

*Attorneys for Defendant Baisch Engineering,, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy of the foregoing has been served upon counsel of record by the Court's ECF system.


     /Shanda L. Spurlock/
Counsel for Defendant
Spirit Construction Services, Inc.

3791964_2.doc